## Oppenheimer *versus* Wright.

1. A married woman may lawfully mortgage her separate real estate to secure the pre-existing debt of her husband.

2. In an action upon such a mortgage, duly executed and acknowledged, the uncorroborated testimony of the wife that she was imposed upon by misrepresentations of her husband and the mortgagee at the time of executing the mortgage, and that she did not know it was a mortgage, or its legal effect, which testimony is contradicted not only by the certificate of acknowledgment, but also by the direct testimony of the plaintiff and of the justice who took the acknowledgment, is insufficient to submit to the jury as a defence on the ground of fraud or duress.

3. What is sufficient evidence that a Justice of the Peace made known to a married woman the contents of a mortgage at the time of taking her separate acknowledgment, considered.

May 12, 1884. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. GORDON, J., absent.

ERROR to the Court of Common Pleas of *Bedford county:* Of January Term, 1884, No. 4.

Scire facias sur mortgage, by R. N. Oppenheimer, B. Oppenheimer and S. Oppenheimer against Paul Wright and Laura Wright. The mortgage in suit was dated October 11, 1880, given by Paul Wright and Laura Wright, his wife, to the plaintiffs, to secure the payment of the sum of $219.15, in fifteen months after date, with interest; and conveying in mortgage a certain home and lot, being the separate estate of the wife. The debt was contracted by her husband. The mortgage was duly and separately acknowledged by the mort-

gagors in the form required by Act of Assembly to convey the wife's estate, before a Justice of the Peace, and was duly recorded two days after its date.

On the trial, before BAER, P. J., counsel for defendants made the following offer: To prove by the witness Laura A. Wright, defendant, that she was led to sign her name to the paper or mortgage in suit, by the misrepresentations of the plaintiff, and that she was imposed upon as to its purpose by him, and she signed it without a full knowledge of its contents and purpose.

Objected to, because the offer does not allege fraud or duress, and in the absence thereof, the certificate of the magistrate is conclusive. Objection overruled, and testimony admitted. Exception.

Mrs. Wright testified as follows:

*Q.* What occurred on the day that this paper was signed?

*A.* In the afternoon, Mr. Oppenheimer called and asked if Mr. Wright was at home. I told him he was not, and then he said he would be back again in the evening, and he did come in the evening, and they went in the room, and Mr. Oppenheimer said they wanted to settle up their book, and they went in there and I went out in the other room, and after they were through they called me and I came in, and Mr. Oppenheimer said they counted up the book and asked me if I would have any objections for signing a little store paper, and I said not; he got up then and walked out and said he would be back in a minute, and when he came in he brought Mr. Smith (the Justice) along, and they came in and laid the paper down on the table, and Mr. Wright signed it, and they asked me to sign it, and Mr. Smith said do you know what you are going to do? and I said no, and he stood quite a little while and then he asked me again, and he said I had signed my property to Mr. Oppenheimer, and I commenced to cry and I don't know who took it up, whether Mr. Smith or Mr. Oppenheimer, and they went out.

*Q.* Was the paper read over to you?

*A.* No, sir; it was not.

*Q.* Did any one tell you what it was before your name was to it, except Mr. Oppenheimer said it was a little store paper?

*A.* He said it was a little store paper, when he come in and laid it down he did not say it was.

*Q.* Did you sign this, believing it was a store paper he asked you to sign?

*A.* I could not say; I did not know what kind it was; I thought it was; I did not know it was a mortgage.

*Q.* You thought it was a store paper?

*A.* Yes, sir.

[Oppenheimer v. Wright.]

*Q.* After you had signed it, Squire Smith asked you what you had done?

*A.* Yes, sir.

*Q.* Did you ever sign a mortgage before?

*A.* No, sir; I did not; I never saw one until I saw that one; I did not know what kind of a paper they were.

*Q.* Did you ever sign a deed?

*A.* No, sir.

*Q.* Did you ever sign a paper of any kind?

*A.* No, sir; I did not; I never did.

*Q.* Had anybody, up to the time you had put your name to this paper, mentioned that there was to be a mortgage given?

*A.* No, sir; they did not.

*Q.* Had anybody suggested any paper was to be given that would be a lien on your property?

*A.* No, sir.

*Q.* Or conveyance or deed of the property?

*A.* No, sir; nothing of the kind.

*Q.* Did you know that would be the effect of this paper?

*A.* No, sir; I did not.

*Q.* Did you know that there was a clause in this paper, at any time, that allowed them to issue a writ to revive judgment against you or proceed against you to collect at the end of the year, or when the money was due?

*A.* No, sir; they did not say anything; I did not know anything about it.

*Q.* Did you ever know it until this day?

*A.* No, sir; not until you mentioned it.

*Q.* Did they tell you there was a clause allowing attorney's fee for collection?

*A.* No, sir.

*Q.* Was there anything said about this having the effect of a deed?

*A.* No, sir.

*Q.* Were those papers in your hands after you put your name to them?

*A.* No, sir; they were taken right away off the table; I don't know who had them.

*Q.* Then you were told it was a mortgage?

*A.* Yes, sir.

The material testimony on the part of the plaintiffs is recited in the opinion of this court.

The plaintiffs presented, inter alia, the following point:

3. Fraud is not to be presumed, it must be shown by clear and positive proof, and there is no such evidence in this case to warrant the court in submitting the case to the jury.

ANSWER. This we decline to affirm. Fraud must be proved,

and the jury must be satisfied by clear and satisfactory proof. They are to determine this from all the evidence, direct and circumstantial, that bears on the case. If she was induced to sign, and acknowledge through any false representations, or by being imposed upon, so she did not learn then to know she was executing a mortgage to secure her husband's debt, and the plaintiff was himself active in it, then it is void as to her.

Verdict and judgment for the defendants. The plaintiffs took this writ of error, assigning for error the admission of the above offer, and the answer to the above point.

*Alexander King* for the plaintiff in error.

*McNamara* (*Kerr* with him) for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, June 9, 1884.

We held in Phillips v. Meily, decided at the present term [*ante*, p. 536], that the uncorroborated oath of the maker of an instrument of writing, contradicted by the oath of the opposite party, was not sufficient to submit to the jury upon the question of the reformation of the instrument. While this record presents a different question, it is not without analogy to Phillips v. Meily.

The case below was a scire facias upon a mortgage given by Laura Wright to secure a debt of her husband and co-defendant. That a married woman may mortgage her separate estate to secure her husband's debt has been expressly decided: Haffey v. Carey, 23 P. F. S., 431. It was not denied that the husband owed the money for which the mortgage was given; hence if the instrument was obtained without fraud or duress practised upon the wife, and was executed with the formalities required by law, her separate estate is bound.

The learned Judge submitted the case to the jury upon the evidence, and a verdict was rendered for the defendants. The only question we need consider is whether there was sufficient evidence of fraud to submit to the jury.

The testimony of the plaintiff and defendant is in direct conflict with regard to the alleged fraud. If the plaintiff is believed, there was no fraud; if Mrs. Wright is believed, she was imposed upon by the plaintiff. Were this a bill to reform the mortgage, a chancellor could not make a decree upon this condition of the evidence. But the question here involves the due execution of a mortgage by a married woman. All the requirements of the law must be complied with in order

to bind her separate estate for her husband's debt. Upon this point we have the official certificate of the magistrate that the mortgage was acknowledged in the manner required by law, and the oath of that officer when on the witness stand in support of his certificate. He testified that he examined her apart from her husband; that he explained to her the character of the instrument. "I told her then certainly what it was, and what it would do; asked her if she was doing it freely and voluntarily, without any compulsion. She acknowledged it there before me. . . . . . I thought it an unwise thing for her to do. I certainly told her the effect. . . . . . I told her it was a mortgage . . . . . and unless it was paid within a year and three months they could take her house and lot, and she understood that and was willing it to be so."

I have given enough of the magistrate's testimony to show that it fully sustains his official certificate, that the full contents of the paper were made known to her, as required by the Act of Assembly. We must take a common sense view of the matter. The acknowledgment was taken as probably nearly all other acknowledgments are taken throughout the State. If the mortgage had been read over to Mrs. Wright it would have been a literal compliance with the Act of Assembly. Yet in that case the defendant, if an ignorant woman, as is alleged, might, and probably would, have had a very imperfect understanding of its force and effect. Instead of doing so the magistrate explained it to her; told her that it was a mortgage; that if the money was not paid when due it would take away her house and lot. In what stronger language could he have informed her of the character of the paper? It was just what would make the strongest impression upon the mind of an ignorant woman, and cause her to hesitate if the act was not her free will.

Nor was the magistrate essentially contradicted, even by Mrs. Wright, upon this point. Both she and her husband admit that the magistrate explained the character of the paper to them, but with the qualification that such explanation was made after the paper was signed. This was natural, and no doubt in accordance with the truth. A paper is usually signed before it is acknowledged. The magistrate is then called upon to take the acknowledgment. Then is the time to make known the character of the paper. Then is the time to object if any fraud or duress has been practised, and in case of such objection no magistrate of average respectability, who understands his duties, will proceed further. Mrs. Wright does not say that when she acknowledged the mortgage its contents had not been made known to her; the certificate and the oath of the magistrate are full upon that point, and there

was nothing in the case which was entitled to go to the jury to contradict the certificate, certainly not enough to overcome it. The mortgage of a married woman would be as worthless as the paper upon which it is written if the acknowledgment can be overthrown by her mere statement that she did not fully understand the paper.

The learned Judge should have given a binding instruction to find for the plaintiff.

> Judgment reversed, and a venire facias de novo awarded.